THE MIRIAM HOSPITAL *vs.* ZONING BOARD OF REVIEW OF THE CITY OF PROVIDENCE.

DECEMBER 2, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

Moss, J. This is a proceeding begun by a petition for a writ of *certiorari* to bring before this court for review a certain decision of the zoning board of review of the city of Providence. By this decision it granted an application of the Church of the Messiah, in that city, for an exception or variance under its zoning ordinance so that a certain large one-family dwelling house located at 45 Parade street in that city and belonging to the church could be used for a funeral parlor. The writ was issued and a return made thereto.

Undisputed evidence produced before the board showed the following facts. The lot on which the dwelling house stands, and of which the frontage is about 82 feet, is located in a district classified under the zoning ordinance as an "Apartment house D-1 district". Therein, besides the uses permitted in a dwelling house district, the following are the permitted uses: apartment house, boarding, rooming or fraternity house, or dormitory, hotel, community center building, private club, excepting one the chief activity of which is a service customarily carried on as a business, philanthropic or eleemosynary institution other than a penal or correctional institution, or a hospital or sanitarium other than for the insane or feeble-minded.

The city zoning ordinance provides in sec. 24 for a board of review with all the power and authority and subject to all the duties provided in the zoning act. Subsection B in

that section begins thus: *"Exceptions under specific rules. When in its judgment the public convenience and welfare will be substantially served or the appropriate use of neighboring property will not be substantially or permanently injured, the Board of Review may in a specific case, after public notice and hearing and subject to appropriate conditions and safeguards, determine and vary the application of the district regulations herein established in harmony with their general purposes and intent as follows:—."*

Specification (10) under this subsection B is as follows: "Permit in any district any use or building deemed by the said board to be in harmony with the character of the neighborhood and appropriate to the uses or buildings authorized in such district."

General laws 1938, chap. 342, dealing with the subject of zoning, sets forth in § 8 the following provisions: "The city council of any city or the town council of any town and the representative council of the city of Newport shall provide for the selection and organization of a board of review, and in the regulations and restrictions adopted pursuant to the authority of this chapter shall provide that said board of review may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained, or where such exception is reasonably necessary for the convenience or welfare of the public."

Further along in § 8 are the following provisions: "The board of review shall have the following powers:

"a. To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative officer in the enforcement of this chapter or of any ordinance adopted pursuant thereto.

"b. To hear and decide special exceptions to the terms of the ordinance, upon which such board is authorized to pass under such ordinance.

"c. To authorize upon appeal in specific cases such variance in the application of the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

The application of the church was described therein as brought under this last paragraph, "c". It was first heard by the board on April 29, 1941, after due notice, by public advertisement, to all persons who might be interested, and also by written notice sent by mail to all owners of property within a radius of one hundred feet from the property of the church, including the hospital; and after the members of the board had visited the property involved, testimony was taken in behalf of the application, but none was offered in opposition. The only opposition was expressed in a letter which was written by the superintendent of the hospital and read at the hearing.

The evidence showed that the property described in the application had been bought by the church about ten years before for use as a rectory and had been so used for some years; that later the neighborhood had so changed as to be much less desirable for one-family residence purposes, especially on account of a great increase of traffic on Parade street; that the house had ceased to be usable as a rectory; and that, although the property had been kept in excellent repair, it had, on account of the changes in the neighborhood, ceased to be rentable or salable, for any reasonable amount, for residence purposes solely.

The evidence showed also that it could be sold for a reasonable amount to a man who would make no structural changes in the building, would use only the ground floor for the purpose of a funeral home, would use the upper floors for his own residence only, and would conduct the funeral home in a way that was evidently not objected to by the owners of neighboring property other than the hospital.

The matter was then continued to May 6 so that any interested owners who had not been heard could be heard. At the later hearing on that day the superintendent of the hospital was present and testified that the hospital, the building of which was on the corner, had recently bought the house and lot which lie just between the hospital lot and the lot belonging to the church and that the hospital intended to build on its new lot, at some indefinite time in the future, a private wing to the hospital building for the use of its paying patients. He testified that it would not be pleasant but would be very objectionable to the patients and their visitors to have to look out at a funeral home.

He testified also that the president of the hospital corporation had instructed him to object to the granting of the church's application; that no action in the matter had been taken by the board of trustees, its last meeting having been held before notice of the application had been given; and that it would not meet until a week from the day of the hearing. No request was made for any postponement of the matter to permit the board of trustees to act upon it or to permit any further evidence to be introduced.

The zoning board of review then considered the matter; and the record states that it was the opinion of all the members "that the granting of the application would be in the public interest, and that owing to special conditions in the neighborhood a literal enforcement of the provisions of the ordinance would result in unnecessary hardship to the applicant, and that substantial justice would be done and that the spirit of the ordinance would be observed by the granting of the application." By the unanimous action of the board the application was accordingly granted.

Later in the same month the hospital by its legal counsel filed with the board a petition, signed by two vice-presidents of the hospital, that the board vacate its resolution by which it granted the application of the church and reopen the matter for further hearing and consideration. The board then consulted the city solicitor as to its power to grant

such a petition and was advised that such power was very doubtful and that, if it was possessed at all, it should be exercised only in extreme situations.

When, after that opinion had been received, the petition came before the board for action, the writ of *certiorari* had been issued and served upon the board. It therefore voted to lay upon the table the matter of the petition by the hospital for a rehearing on the application of the church.

Under all the circumstances we cannot properly say that the board was in error in not granting the petition by the hospital.

The hospital, by its attorneys, contends vigorously that the board had no authority to act on the application of the church in the form in which it was presented. This contention is based on the fact that the church, in its application, described it as made under paragraph "c" of the state enabling act, which paragraph is set forth *supra*. By this a zoning board of review is empowered to "authorize upon appeal in specific cases" and under certain circumstances a "variance in the application of the terms of the ordinance."

The contention is that the word "appeal" here is confined to an appeal from "any order, requirement, decision or determination made by an administrative officer in the enforcement of the zoning act or of any ordinance adopted pursuant thereto"; that the application of the church was an original proceeding and not an "appeal" in the restricted sense above stated; and that therefore the board had no jurisdiction to act upon it.

But if the word "appeal" is to be thus narrowly construed, the last preceding paragraph, "b", of the zoning act should be construed with all reasonable liberality; and it is our opinion that when it is so construed, and sec. 24, subsection B and paragraph (10) thereof, quoted above from the zoning ordinance, are given a reasonable construction, it is clear that the board had the jurisdiction to grant the application of the church in the instant case, if based on paragraph "b" of the zoning act.

It is too late for the hospital to raise in this court, for the first time in this matter, the contention that the church's application was based on the wrong paragraph of the zoning act. Under the circumstances here, it is sufficient to support the jurisdiction of the board to grant the application of the church, that it had general jurisdiction over the subject-matter of that application, which in our opinion it clearly had. We are also of the opinion that its consideration of the evidence and its decision were entirely consistent with an exercise of that jurisdiction. We therefore see no need of passing upon the question of the construction to be given to the word "appeal" in § 8, paragraph "c" of the zoning act.

After considering the evidence before the board, we are of the opinion that we cannot properly hold that there was any abuse of discretion by the respondent in making the decision which is now before us for review. See *Roberts* v. *Zoning Board of Review*, 60 R. I. 202, 197 A. 461. For a zoning case in which it is held that a funeral home may properly be permitted next to a hospital see *Sandler* v. *Board of Commissioners*, 126 N. J. L. 392, 19 A. 2d. 788.

The petitioner's prayer for relief is denied and the decision of the respondent board is affirmed.

*Temkin & Temkin, Samuel Temkin, Jacob S. Temkin,* for petitioner.

*Haslam, Arnold & Sumpter, Charles R. Haslam, Harry A. Tuell,* for the Church of the Messiah.

*William A. Needham, Arthur H. Feiner,* for respondent.